**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 11-cr-00376-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     EXECUTIVE RECYCLING, INC.,
2.     BRANDON RICHTER, and
3.     TOR OLSON,

      Defendants.

_____

**ORDER REGARDING JURY INSTRUCTIONS FOR COUNTS 14 AND 15**

_____

On September 15, 2011, the Grand Jury returned an Indictment charging the

Defendants, in relevant part, with the following:

Count 14
42 U.S.C. § 6928(d)(4)

On or about April 5, 2008 in the State and District of
Colorado and elsewhere, the Defendants ER, Brandon
Richter, and Tor Olson knowingly exported and caused to be
exported hazardous waste, namely CRTs which exhibited
the characteristic of toxicity for lead, in a shipping container
labeled GATU 8815610, and in connection with that export
failed to file a Notification of Intent to Export with the United
States Environmental Protection Agency as required under 6
C.C.R. 1007-3 § 262.53.[1]

All in violation of Title 42, United States Code,

_____

[1] Section 262.53 is titled "Notification of Intent to Export" and, in part, requires that a
"primary exporter" of "hazardous waste" notify the EPA of an intended export at least 60 days
before the waste is shipped off-site.

Section 6928(d)(4)[2], and Title 18, United States Code,
Section 2[3].

## Count 15
### 18 U.S.C. § 554

Between on or about March 13, 2008 and April 5,
2008, in the State and District of Colorado and elsewhere,
the defendants ER, Brandon Richter, and Tor Olson
knowingly and fraudulently facilitated the transportation,
concealment and sale of merchandise, articles, and objects,
to wit, CRTs, prior to exportation, knowing that such CRTs
were intended for exportation contrary to any law and
regulation of the United States, specifically, 42 U.S.C. §
6928(d)(4) and 42 U.S.C. § 6928(d)(6)[4].

All in violation of Title 18, United States Code,
Section 554[5].

(ECF No. 1.)  The case is set for a thirteen day jury trial beginning on December 3,

2012.  (ECF No. 139.)  In accordance with the Court's October 17, 2012 Order, the

parties filed proposed jury instructions on November 13, 2012 and objections to the

opposing parties' proposed jury instructions on November 19, 2012.  (ECF No. 161.)

After reviewing the parties' proposed jury instructions, the Court ordered further

briefing with respect to the jury instructions that would govern the jury's determination of

whether the materials at issue here were hazardous waste and set oral argument on

this issue.  (ECF No. 200.)  On November 27, 2012, the Court held argument on these

---

[2]  Section 6928(d)(4) makes it a crime to, amongst other things, knowingly transport, dispose of, or export "any hazardous waste" and to knowingly fail to maintain or file any documents required to be maintained or filed by state regulation.

[3]  18 U.S.C. § 2 prohibits "aiding and abetting" a criminal act.

[4]  Section 6928(d)(6) makes it a crime to knowingly export a "hazardous waste" without the consent of the receiving country.

[5]  18 U.S.C. § 554 makes it a crime to knowingly export anything from the United States in a manner that is contrary to United States law or regulation.

instructions, and Defendants' related Motion to Dismiss Counts 14 and 15.  (ECF No. 224.)  After considering the proposed instructions, the subsequent briefing, and the parties' oral argument, the Court has decided how it will instruct the jury on the definition of hazardous waste and its components.  The Court's rationale underlying this decision, as well as the instructions it will read to the jury after the close of the evidence, follow.

## I.  RELEVANT PROPOSED JURY INSTRUCTIONS

To provide context for the remainder of the Order, the Court will first recite the parties' proposed jury instructions.

## A.    Stipulated

The parties have stipulated to the following instructions[6]:

### STIPULATED INSTRUCTION NO. 19
### Characteristic of Toxicity

Characteristic hazardous wastes are wastes that are hazardous because they exhibit one or more of the hazardous characteristics identified in the regulations, such as toxicity. A solid waste is a hazardous waste exhibiting the characteristic of toxicity if, using the Toxicity Characteristic Leaching Procedure (TCLP"), Test Method, the extract from a representative sample of the waste contains lead at a concentration equal to or in excess of 5.0 milligrams per liter.
A "representative sample" is a sample of a universe or whole (e.g., a waste pile, lagoon, groundwater) which can be expected to exhibit the average properties of the universe or whole.

---

[6]  The Court notes that Stipulated Instructions 18 & 20 also relate to Counts 14 and 15. The Court's final set of instructions will likely include some version of those Stipulated Instructions 18 & 20 but the Court will not discuss such instructions in this Order as they are not directly relevant to the issues at hand.

**STIPULATED INSTRUCTION M[7]**
**Definition of Electronic Device and**
**Electronic Component**

"Electronic Device" means electronic equipment that contains one or more electronic circuit boards or other complex circuitry, including but not limited to computer monitors, televisions, central processing units (CPUs), laptops, printers, terminals, mainframes and stereo equipment.

"Electronic Component" means components, subassemblies or other parts derived from the disassembly of electronic devices.

"Cathode Ray Tubes (CRTs)" are vacuum tubes, made primarily of glass, which constitute the video display components of televisions and computer monitors.

A computer monitor is an electronic device.

A CRT is an electronic component.

(ECF No. 172.)

**B.      Disputed Instructions**

The relevant disputed jury instructions proposed by each party are as follows:

1.      <u>Government</u>

The Government incorporated all of its proposed instructions regarding the waste

determination into one instruction:

**DISPUTED INSTRUCTION NO. 5**
**Definition of Terms Relevant to "Hazardous Waste"**

The government is required to prove that the material charged in Counts 14 and 15 was a hazardous waste. The term "hazardous waste," for purposes of Counts 14 and 15

---

[7]  This instruction was originally proposed as Defendants' Disputed Instruction M. However, in its Objections to Defendants' Disputed Instructions, the Government stated that it would not oppose Instruction M if the Court included the following phrase: "'Cathode Ray Tubes (CRTs)' are vacuum tubes, made primarily of glass, which constitute the video display components of televisions and computer monitors."  At oral argument, Defendants stated on the record that they had no opposition to the addition of the Government's requested language. Accordingly, the Court has added the definition of CRT proposed by the Government and considers Instruction M to be stipulated.

means a solid waste that exhibits the hazardous characteristic of "toxicity" as defined in the following instruction. Therefore, before you can conclude that the CRTs were "hazardous waste" you must first find that the CRTs are a solid waste.

A solid waste is defined as any garbage, refuse, or other discarded material.

A material is discarded if it is 1) abandoned, or 2) recycled.

A material is abandoned if it is disposed of, or if it is accumulated, stored or treated (but not recycled) before or instead of being disposed.

A material is recycled if it is sent for reclamation, or accumulated or stored before reclamation.

A material is reclaimed if it is processed to recover a useable product, or if it is regenerated.

The intended use of the material may determine whether it is a waste or a product. For post-consumer electronics to be considered products and not waste, they must have reuse and/or resale value for their original intended purpose. Examples include a computer monitor that is resold for continued use as a monitor. You may consider all the evidence in the case in order to determine whether the defendants intended to discard the CRT's.

(ECF No. 178 at 12-13.)

2.   Defendants

Defendants have submitted joint disputed instructions and propose that the jury's

waste determination be controlled by the following three instructions:

**DEFENDANTS' INSTRUCTION L**

Under controlling environmental regulations, electronic devices and electronic components may or may not be classified as waste depending on the factors set forth in Instruction N. If you determine that the used electronics in this case classified as waste, then you must decide whether the defendants' management of those electronics satisfied the waste management regulations discussed later in these instructions.

-5-

If you determine that the electronics at issue in this case did not classify as waste, then those environmental regulations do not apply to the defendants' conduct and you must find the defendants not guilty on count 14.

## DEFENDANTS' AMENDED INSTRUCTION N

The controlling environmental regulations do not apply to persons managing used electronic devices and electronic components that are not yet wastes. In determining whether a used electronic device or a used electronic component has become a waste, you are instructed that:

(1)     A used electronic device destined for recycling becomes a waste on the date the recycler determines that the device cannot be resold, donated, repaired, or refurbished; or determines that he cannot directly reuse or resell useable parts from the device; and

(2)     An electronic component becomes a waste on the date the recycler determines that the component cannot be resold, donated, repaired, or refurbished; or determines that he cannot directly reuse the component.

If a used electronic device or electronic component is not waste, it cannot be hazardous waste.

## DEFENDANTS' INSTRUCTION O

If you determine that the used electronics at issue in this case classified as waste, you must then determine whether they constituted "hazardous waste."  A waste is hazardous waste if it has no commercial use or value and it exhibits any of the characteristics of hazardous waste, including ignitability, corrosivity, reactivity, or toxicity.

(ECF No. 177 at 17, 20; 179 at 3.)

## II.  RELEVANT STATUTES AND REGULATIONS

The Resource Conservation and Recovery Act ("RCRA") enlists the states and

municipalities to participate in a "cooperative effort" with the federal government to

develop waste management practices that facilitate the recovery of "valuable materials

and energy from solid waste." 42 U.S.C. § 6902(a)(11).  A state can apply to the

Environmental Protection Agency ("EPA") "for authorization to administer and enforce

its own hazardous waste program [so long as] its program is equivalent to the federal

program and provides adequate enforcement."  *United States v. Power Eng'g Co.*, 303

F.3d 1232, 1236 (10th Cir. 2002); *see also* 42 U.S.C. § 6926(b).  A state program

authorized pursuant to RCRA operates "in lieu of" the federal program.  42 U.S.C. §

6926(b).  An authorized state may adopt restrictions that are more stringent than the

federal regulations but are precluded from adopting regulations that are less stringent.

*See* 42 U.S.C. § 6929; *Old Bridge Chemicals v. New Jersey Dep't of Environmental

Protection*, 965 F.2d 1287 (3d Cir. 1992) (RCRA sets a "floor" that no state regulation

may fall below).

Colorado has enacted its own hazardous waste program, *see* Colorado

Hazardous Waste Management Act ("CHWMA"), Colo. Rev. Stat. §§ 25-15-301 to -327,

and in 1984, the EPA authorized Colorado "to operate its hazardous waste program in

lieu of the federal program,"  49 Fed. Reg. 41,036 (Oct. 19, 1984).  *See also United

States v. Colorado*, 990 F.2d 1565, 1571 (10th Cir. 1993).  Colorado's program has

been explicitly reauthorized a number of times, most recently on November 21, 2012.

*See* 77 Fed. Reg. 69765 (November 21, 2012).  Colorado Department of Public Health

and Environment ("CDPHE") administers Colorado's hazardous waste management

program.  The relevant portions of the Colorado regulatory scheme are structured as

follows.

In Count 14, Defendants are charged with a violation of 6 C.C.R. § 1007-

3:262.53, which requires a "primary exporter" of "hazardous waste" to notify the EPA at

least 60 days before the hazardous waste is scheduled to leave the United States.

Under the Colorado regulatory scheme, an electronic device or component can be

considered a "hazardous waste" under at least two provisions: (1) Part 261:

Identification and Listing of Hazardous Waste, 6 C.C.R. § 1007-3:261 *et seq*. ("Part

261"); and (2) Part 273: Standards for Universal Waste Management, 6 C.C.R. § 1007-

3:273 *et seq*. ("Part 273").

Part 261 "identifies those solid wastes which are subject to regulation as

hazardous wastes" under Parts 262-268 (including Part 262.53).  Part 261 defines a

"hazardous waste" as any "solid waste" that "has no commercial value" and "exhibits

any of the characteristics of hazardous waste identified in Subpart C of this part."  6

C.C.R. § 1007-3:261.3(a).  A "solid waste" is defined in this section as "any discarded

material" that does not fall within certain exceptions.  6 C.C.R. § 1007-3:261.2(a)(1).

"Discarded material" is then defined as "any material which is: (i) Abandoned . . . ; (ii)

Recycled . . . ; or (iii) Considered inherently waste-like."  *Id*. at 261.2(b)(1)-(3).  Part 261

then defines "abandoned", "recycled", and "inherently waste-like."

The definition of "solid waste" in Part 261 is nearly identical to how "solid waste"

in defined in the federal regulations implementing RCRA.  *See* 40 C.F.R. § 261.2.  The

Government's Disputed Instruction 5, for the most part, tracks Part 261.  Defendants

also include aspects of Part 261 in their Disputed Instructions.  (ECF No. 178 at 12-13.)

Specifically, Defendants Instruction O incorporates the definition of "hazardous waste"

from Part 261.  (ECF No. 177 at 20.)

Defendants' Disputed Instruction N relies on Part 273.  "The Part 273 Universal

Waste Regulations provide an alternate set of management standards that a generator

can choose to follow in lieu of regulation under Parts 200 through 268."  6 C.C.R. §

1007-3:273.1.  Part 273 applies to six categories of materials, one of which is

"electronic devices and electronic components."  *Id.*; *see also* 6 C.C.R. § 1007-

3:261.9(a)(6).  Part 273(f) states that "[a]n electronic device or electronic component is

a hazardous waste if it exhibits one or more of the characteristics identified in Part 261,

Subpart C."  Under Part 273(f), an electronic device or electronic component can

become a waste four ways:

> (i) A used electronic device destined for disposal becomes a
> waste on the date it is discarded.
> (ii) A used electronic devices destined for recycling becomes
> a waste on the date the recycler determines that the device
> cannot be resold, donated, repaired, or refurbished, or
> determines that he/she cannot directly reuse or sell useable
> parts from the device.
> (iii) An electronic component becomes a waste on the date
> the recycler determines that the component cannot be
> resold, donated, repaired, or refurbished, or determines that
> he/she cannot directly reuse the component.
> (iv) An unused electronic device becomes a waste on the
> date the handler decides to discard it.

6 C.C.R. § 1007-3:273.2(f)(3).

## III.  ANALYSIS

To convict Defendants on Counts 14 and 15, the parties agree that the jury must

first determine that the materials at issue in this case were "hazardous waste".  To

constitute hazardous waste, the jury must first find that the materials were "waste".

Thus, in the discussion below, the Court will explain the rationale underlying its

instructions on these issues.

### A.   Instructions Guiding the Determination of Whether the CRTs at Issue in this Case were "Waste"

The first issue that the jury must decide is whether the electronic devices and components at issue in this case were "waste".  With respect to this issue, the parties dispute: (1) whether the fact that this case involves exportation of electronic materials to another country means that the Court must apply federal law rather than Colorado law; (2) if Colorado law applies, whether the waste determination is governed by Part 261 or Part 273 of the Colorado regulations; and (3) if Part 273 applies, the role that a 2004 Memoradum issued by CDPHE should play in the Court's instructions.  The Court will address each of these issues below.

### 1.   Whether Federal law or Colorado law applies

The Government argues that, because the charges in Counts 14 and 15 relate to international exports of hazardous waste, Federal regulations implementing RCRA apply rather than Colorado's regulations.  In support of this argument, the Government relies on the following EPA statement which appears in a proposed amendment to a rule that governs certain imports and exports of hazardous waste:

> B.   Effect on State Authorization
>
> Because of the Federal government's special role in matters of foreign policy, EPA cannot authorize States to administer Federal import/export functions in any section of the RCRA hazardous waste regulations. This promotes national coordination, uniformity and the expeditious transmission of information between the United States and foreign countries. Although States do not receive authorization to administer the Federal government's functions in subparts E or F, in accordance with 271.10, the State program must include requirements respecting international shipments equivalent to those at subparts E and F. States are also not authorized to administer the Federal government's functions in subpart

> H, but in this case, States are not required to adopt those
> provisions.

*See* 73 Fed. Reg. 58388 (October 6, 2008).

The key here is whether a state is "administering" Federal import/export functions by having its regulations define what constitutes a hazardous waste. The law is clear, under both Federal and Colorado regulations, that all permits for exportation and notices regarding exportation are required to be *issued* by the Federal Government. Thus, there is no dispute that Colorado is not "administering" import/export functions in the sense that it is not the entity tasked with issuing export permits or receiving export notices.

However, the fact that export permits must be issued by the Federal government does not mean that Federal regulations must define what constitutes a hazardous waste. RCRA explicitly provides that an authorized state program operates "in lieu of" the federal program. 42 U.S.C. § 6926(b). The Supreme Court has described the relationship between the federal government and an authorized state as follows: "RCRA regulates the disposal of hazardous waste in much the same way [as the Clean Water Act], with a permit program run by EPA but *subject to displacement* by an adequate state counterpart." *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 611 (1992) (emphasis added). A Memorandum authored by EPA's enforcement counsel stated: "When EPA authorizes a [state] hazardous waste management program . . . the state program becomes the RCRA program in that state . . . . In other words, the only hazardous waste program in effect in that state is the state program, and the state laws and regulations are those which must be enforced by EPA should federal enforcement

action be necessary."  (ECF No. 211-2.)

The fact that courts broadly state that federal regulations are "displaced" or "supplanted" by state regulations when a state becomes "authorized" under RCRA means that the relevant regulations for this case are the Colorado regulations.  *See United States v. Elias*, 269 F.3d 1003 (9th Cir. 2001) (holding that an authorized state's definition of hazardous waste "supplanted" federal regulations on the same issue).  The Government's own proposed disputed jury instructions seem to agree on this point, as the Government's Disputed Instruction 5 cites all Colorado Regulations.  Given the fact that Colorado has long been an "authorized" state, and the long-standing case law which provides that an authorized states's regulations supplant the federal standards, the Court has little trouble concluding that Colorado regulations, and specifically Colorado's hazardous waste definitions, govern the jury's deliberations in this case.

The Government also argues that it has "made it clear that it intends to maintain federal oversight of all hazardous waste exportation, and notification of intent to export provision in particular, for over twenty-five years."  (ECF No. 214 at 13-14.)  The Government then cites a Federal Register entry stating that States have no authority to receive Notifications of Intent to Export and cannot transmit a Notification of Intent to Export to foreign countries.  (*Id*. (citing 51 Fed. Reg. 28664 (August 8, 1986).)  Rather, only the Federal Government can be involved in the notification process so that there is one point of contact and more uniformity.  (*Id.*)

Despite the Government's insistence that this shows that Federal standards govern all exports, this Federal Register entry establishes only that the Federal Government has to issue and transmit all Notifications of Intent to export.  Nothing in

this Federal Register entry states that Federal waste regulations (rather than state regulations in an authorized state) determine when the filing of a Notification of Intent to Export is required.  Whether a Notice of Intent to export is required depends on whether a material is classified a "hazardous waste".  *See* 42 U.S.C. § 6928(d)(4); 6 C.C.R. § 1007-3:262.53.  Federal regulations and the case law discussed above make it clear that, because Colorado is an authorized state, Colorado law governs the determination of whether the materials at issue here were "hazardous waste".

      2.    <u>Whether Part 261 or Part 273 applies</u>

Having decided that Colorado law applies here, the Court must next determine what aspect of the Colorado regulatory scheme applies.  Colorado's regulatory scheme sets up two alternate paths—Part 261 or Part 273—that a universal waste handler who handles electronic materials and electronic components can choose to follow.  In their disputed jury instructions, the parties dispute how Parts 261 and 273 relate to each other.  Defendants contend that they managed their electronic waste in accordance with Part 273 and, therefore, only these regulations should govern the jury's waste determination.  The Government contends that Part 273 should play a role, but only as a supplement to the solid waste definitions contained in Part 261.

Having reviewed Colorado's regulatory scheme, the Court rejects the Government's contention that Part 273 must be read in conjunction with Part 261.  Part 273.1(b) states that the purpose of Part 273 is to provide "an *alternative* set of management standards *in lieu of* regulation under Parts 260 through 268, and Parts 99 and 100 of these regulations."  6 C.C.R. § 1007-3:271.1(b) (emphasis added).  Interpretive guidance issued by CDPHE further emphasizes the alternate nature of

-13-

Parts 261 and 273:

> Electronic equipment and components removed from
> electronic equipments determined to be hazardous waste
> can *either* be managed in full compliance with the Colorado
> Hazardous Waste Regulations [*6 CCR 1007-3*] Parts 260-
> 68, 99 and 100, *or* they can be managed in compliance with
> the reduced requirements of the Universal Waste Rule in
> Part 273.  The Universal Waste Rule provides an *alternative
> set* of reduced management standards that the generator
> can follow instead of the full hazardous waste requirements.

(ECF No. 189-2 (emphasis added).)  These authorities show that Parts 261 and 273

are two completely separate paths; nothing in the statutory scheme or the interpretive

guidance provides that Part 273 should be read in conjunction with Part 261 or vice

versa.

Additionally, the purpose of Part 261 is to "identif[y] those solid wastes which are

subject to regulation as hazardous wastes under Parts 262 through 268."  6 C.C.R. §

1007-3:261.1.  Part 261.9 sets forth a list of materials, including "electronic devices and

electronic components" that "are exempt from regulation under Parts 262 through 268 .

. . except as specified in Part 273 of these regulations and, therefore are not fully

regulated as hazardous waste.  The wastes listed in this section are subject to

regulation under Part 273."  *Id*. at 1007-3:261.9.  Therefore, Part 261.9 plainly states

that when an electronic device or component is managed in accordance with Part 273,

the definitions included in Part 261 are irrelevant.

At oral argument, the Government repeatedly emphasized the fact that it

charged Defendants in Count 14 with violating 6 C.C.R. § 1007-3:262.53, Notification of

Intent to export, which is a hazardous waste provision and not a universal waste

provision.  The Government argues that, because of this charging decision, the Court

must include the "solid waste" definition from Part 261.  As an initial point, the Court questions whether it would be equitable to allow the Government's decision to charge Defendants under Part 262 to deprive Defendants of the ability to manage their electronic equipment and components under Part 273, as they are authorized to do under Colorado law.  However, more significantly, Part 273 has its own export provision—Part 273.40—which states that a "large quantity handler of universal waste who sends universal waste to a foreign destination . . . must: (a) Comply with the requirements applicable to a primary exporter in § 262.53."  6 C.C.R. § 1007-3:273.40. Because Part 273.40 explicitly cross-references the reporting obligations in Part 262.53, the fact that the Government brought charges under Part 262.53 does not impact whether the waste definitions from Part 261 or Part 273 should apply.

The Government also contends that the Court should not instruct the jury on Part 273(f) because this particular provision was never authorized by the EPA.  (ECF No. 214 at 13.)  The Court agrees with the Government that the EPA did not, in 2008, explicitly approve Part 273.2(f), though it did approve other portions of Part 273.2.  *See* 73 Fed Reg. 13141, 13143 (March 12, 2008).  However, on November 14, 2003, the EPA approved Part 261.9, which states: "The wastes listed in this section are subject to regulation under Part 273: . . . (6) Electronic devices and electronic components as described in § 273.2(f) of these regulations."  6 C.C.R. § 1007-3:261.9.  Because the EPA approved a provision that incorporates by reference Part 273.2(f), the Government's argument is not persuasive.[8]

---

[8]  The Government also argued that Part 273.2(f)(3) is preempted by RCRA because it is less stringent than the federal regulations.  (ECF No. 184 at 24-25.)  The Government later clarified that its position was that "federal law preempts defendants' narrow, literal interpretation

Defendants have proffered to the Court that they managed their electronic devices and components in accordance with Part 273.  Under Colorado law, and as universal waste handlers certified by the State of Colorado, they were authorized to do so.  Accordingly, the Court finds that the regulations in Part 273 govern this action and will form the basis for the jury instructions regarding whether the electronic devices and materials were waste.  Because Government's Disputed Instruction 5 is based primarily on Part 261, the Court rejects that Instruction.

3.   Scope of Instructions from Part 273

Part 273.2(f) outlines when an electronic device or electronic component becomes a "waste":

> (3)   **Generation of waste electronic devices and electronic components.**
>
> (i)   A used electronic device destined for disposal becomes a waste on the date it is discarded.
> (ii)   A used electronic device destined for recycling becomes a waste on the date the recycler determines that the device cannot be resold, donated, repaired, or refurbished, or determines that he/she cannot directly reuse or sell useable parts from the device.
> (iii)   An electronic component becomes a waste on the date the recycler determines that the component cannot be resold, donated, repaired, or refurbished, or determines that he/she cannot directly reuse the component
> (iv)   An unused electronic device becomes a waste on the date the handler decides to discard it.

---

of the universal waste definition without regard for the interpretive guidance or other published authority regarding the regulations."  (ECF No. 214 at 8.)  Because, as discussed below, the Court will instruct include instruct the jury that resale or reuse must be "for its original intended purpose" based on the 2004 CHPDE Memorandum, the Government's preemption argument is rendered moot.

6 C.C.R. § 1007-3:273.2(f).  Defendants' Disputed Instruction N quotes directly from this regulation but includes only subparts (ii) and (iii).  The Government contends that the jury instruction should include all four parts of the waste determination.

The Court agrees with the Government and will include all four subparts of Part 273.2(f)(3) in its instruction.  Defendants are free to argue that subpart (i) and (iv) are irrelevant here but, in the interest of completeness, the jury will be instructed on all four subparts.

More significantly, the Government contends that interpretive guidance issued by the CDPHE subsequent to adoption of Part 273.2(f)(3) should be included in the jury instruction.  In 2004, Colorado's Compliance Program Manager for the Hazardous Materials and Waste Management Division issued a Memorandum for the purpose of "clarification of the hazardous waste regulations as they pertain to electronic waste recycling service providers doing business in Colorado."  (ECF No. 184-1.)  The key aspect of this Memorandum is the clarification that, in order for electronic devices or components to not be considered waste, they must be reused or resold "for their original intended purpose."  (*Id*. at 3.)

Defendants oppose the addition of any reference to the device or component's original intended purpose.  Defendants argue that nothing in the 2004 Memorandum states that it was specifically intended to modify Part 273.2(f)(3) and, therefore, the Court should not read this subsequent guidance into the plain language of the regulation.  The Court disagrees.  The 2004 Memorandum repeatedly refers to Part 273 and the "Universal Waste Regulations" (which are Part 273) and states that the intent of the Memorandum is to clarify the hazardous waste regulations as they apply to

-17-

electronic waste recyclers.  As discussed above, and as Defendants vehemently argue in advocating that the Court instruct the jury on Part 273 rather than Part 261, the provisions that apply to electronic waste recyclers are the Universal Waste Regulations in Part 273.  The particular regulation that dictates when an electronic device or component becomes a waste is Part 273.2(f)(3) and the 2004 Memorandum was clearly targeted at this provision as it devotes an entire section to how a recycler is to determine whether an electronic device or component is a "product" or a "waste".  (ECF No. 184-1 at 3.)  Thus, the Court finds that the 2004 Memorandum provided interpretive guidance to the meaning of Part 272.3(f)(3) that is relevant to the jury's determination of whether the electronic materials at issue in this case were waste.[9]

The 2004 Memorandum states, in pertinent part:

> The definition of "product" also needs to be clarified. For post-consumer electronic devices or components to be considered products, they must have reuse and/or resale value for their original intended purpose. Examples include a computer monitor that is resold for continued use as a monitor, a computer CPU that is refurbished for continued use as a computer, or a computer chip that can be removed from one CPU and used to repair another for continued use as a computer. This definition does not include value as scrap metal. Electronic devices and components destined for materials recovery as scrap metal are considered to be wastes, not product.

(ECF No. 184-1 at 3.)

The Court acknowledges, as Defendants argue, that Part 273.2(f) does not

---

[9] The Court also notes that the 2004 Memorandum was published approximately four years before the exports at issue in this case occurred.  As Defendants were certified universal waste handlers by the CDPHE, and their business was electronic waste recycling in a heavily regulated industry, the Court has little difficultly concluding that they had notice of the 2004 Memorandum so as to dispel any concerns regarding Due Process.

contain the word "product".  However, Part 273.2(f)(3) defines when something is "not a waste" and the 2004 Memorandum makes clear that, in the view of CDPHE, anything that is "not a waste" is a "product".  Therefore, the 2004 Memorandum's clarification of what constitutes a "product" is directly relevant to the definition of what is "not a waste" in Part 273.2(f)(3).

Defendants also argue that grafting the interpretive guidance from the 2004 Memorandum onto the text of Part 273.2(f)(3) would impermissibly narrow the waste determination.  Defendants contend that RCRA allows electronic components, which would fall within RCRA's description of "ingredients", to be considered "not waste" if they can be reused for any purpose.  The problem with this argument is that Defendants are essentially contending that Colorado's 2004 Memorandum makes its Universal Waste Regulations more stringent than RCRA's implementing regulations as it would require a wider net of materials to be handled as waste.  RCRA makes clear that Colorado is permitted to do exactly that.  *See* 42 U.S.C. § 6929.  Because, as posited by Defendants, Colorado's requirements are more stringent than RCRA, RCRA is not an impediment to including the 2004 Memorandum's interpretive guidance in the Court's jury instructions.

For all of the reasons stated above, the Court accepts Defendants' Disputed Instruction N but will modify it to include all four subparts of Part 273.2(f)(3) and will incorporate the interpretive guidance contained in the 2004 Memorandum.

**B.     The Court's Jury Instructions on Hazardous Waste**

If the jury determines that the electronic materials at issue in this case constitute "waste", it must then determine if they were "hazardous waste".  Defendants' Disputed

Instruction O provides a definition of "hazardous waste" from Part 261.3(a) which would require the jury to find: (1) that the waste has no commercial value; and (2) that the waste exhibits any of the characteristics of hazardous waste, including ignitability, corrosivity, reactivity, or toxicity.  (ECF No. 177 at 20.)

As discussed above, the Court finds that Part 261 is not relevant to this action. Rather, because Defendants have opted to manage the electronic materials at issue in this case in accordance with Part 273, the definition of "hazardous waste" in Part 273 is applicable.  Part 273.2(f)(2)(ii) provides: "An electronic device or electronic component is a hazardous waste if it exhibits one or more of the characteristics identified in Part 261, Subpart C."  Notably, this definition of hazardous waste omits any reference to whether the waste has "commercial value".  Given that the jury will already have either implicitly or explicitly considered the electronic material's commercial value when determining whether it constitutes a "waste" in accordance with Part 273.2(f)(3)(i)-(iv), the omission of "commercial value" from the "hazardous waste" determination makes sense.

Accordingly, the Court will instruct the jury on the definition of hazardous waste from Part 273.2(f)(2) and Defendants' Disputed Instruction O is rejected.

## V.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     The Government's Disputed Instruction 5 is rejected;

2.     Defendants' Disputed Instruction L is accepted but will be modified as set forth below;

3.     Defendants' Disputed Instruction M is accepted as a stipulated instruction based

on the modifications noted above and discussed at the Court's November 27,

2012 Final Trial Preparation Conference;

4.      Defendants' Disputed Instruction N is accepted but will be modified as set forth

below; and

5.      Defendants' Disputed Instruction O is rejected.

With respect to whether the materials at issue in this case were a hazardous

waste, the Court will instruct the jury as follows:

### What Constitutes a Hazardous Waste

The government is required to prove that the material charged in Counts 14 and 15 was a "hazardous waste". To find that the material is a "hazardous waste", you must find that:

(1)      The material is a "waste" as defined below; and

(2)      The material exhibited "characteristics of toxicity" as defined below.[10]

If you find that the Government has not proven beyond a reasonable doubt that the material was a hazardous waste, then you must return a verdict for Defendants on Counts 14 and 15.

### What Constitutes a Waste

Electronic devices and electronic components can become a "waste" in four ways:

(1)      A used electronic device destined for disposal

---

[10]   The Court notes that Subpart C of Colorado's Hazardous Waste regulations also includes materials that have characteristics of ignitability, corrosivity, and reactivity.  6 C.C.R. § 1007-3:261.20 *et seq*.  However, based on both parties' jury instructions, it appears the only issue here is whether the electronic materials exhibited characteristics of toxicity and, therefore, the Court proposes to instruct the jury only on this quality.  If this is a misapprehension and the characteristics of ignitability, corrosivity, or reactivity are relevant to this case, the Court will amend its instructions to address the appropriate portions of Subpart C.

becomes a waste on the date it is discarded;

(2)     A used electronic device destined for recycling becomes a waste on the date the recycler determines that the device cannot be resold, donated, repaired or refurbished, or determines that he cannot directly reuse or sell useable parts from the device.

(3)     An electronic component becomes a waste on the date the recycler determines that the component cannot be resold, donated, repaired, or refurbished, or determines that he cannot directly reuse the component.

(4)     An unused electronic device becomes a waste on the date the handler decides to discard it.

For subparts (2) and (3) above, in order for an electronic device or electronic component to not be a waste, it must be resold, donated, repaired, reused or refurbished for its original intended purpose.  For example, the following would not be considered a waste: (1) a computer monitor that is resold for continued use as a monitor, (2) a computer CPU that is refurbished for continued use as a computer, or (3) a computer chip that can be removed from one CPU and used to repair another for continued use as a computer.

Electronic devices and components destined for materials recovery as scrap metal are considered wastes.

If an electronic device or component is not a waste, it cannot be a hazardous waste.  Thus, if you find that the materials at issue in this case were not a waste, you must return a verdict for Defendants on Counts 14 and 15.

### Definition of Electronic Device and Electronic Component

"Electronic Device" means electronic equipment that contains one or more electronic circuit boards or other complex circuitry, including but not limited to computer monitors, televisions, central processing units (CPUs), laptops, printers, terminals, mainframes and stereo equipment.

"Electronic Component" means components, subassemblies or other parts derived from the disassembly

of electronic devices.

"Cathode Ray Tubes (CRTs)" are vacuum tubes, made primarily of glass, which constitute the video display components of televisions and computer monitors.

A computer monitor is an electronic device.

A CRT is an electronic component.

### Characteristic of Toxicity

Characteristic hazardous wastes are wastes that are hazardous because they exhibit one or more of the hazardous characteristics identified in the regulations, such as toxicity. A solid waste is a hazardous waste exhibiting the characteristic of toxicity if, using the Toxicity Characteristic Leaching Procedure (TCLP"), Test Method, the extract from a representative sample of the waste contains lead at a concentration equal to or in excess of 5.0 milligrams per liter.

A "representative sample" is a sample of a universe or whole (e.g., a waste pile, lagoon, groundwater) which can be expected to exhibit the average properties of the universe or whole.

The order of the instructions above is not necessarily the order in which they will appear in the Court's final jury instructions.  The Court also reserves the right to modify the instructions stylistically so that they conform with the remainder of the Court's final jury instructions.  However, the substance of the Court's final jury instructions on this issue will be as set forth above.

Dated this 29th day of November, 2012.

BY THE COURT:

William J. Martinez
United States District Judge