**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 11-cr-00376-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     EXECUTIVE RECYCLING, INC.,
2.     BRANDON RICHTER, and
3.     TOR OLSON,

      Defendants.

_____

## ORDER REGARDING MOTIONS *IN LIMINE*

_____

This criminal action is set to begin trial on Monday, December 3, 2012.  Before the Court are: (1) the Government's Motion *in Limine* (ECF No. 218); and (2) Defendants' joint Motion *in Limine* (ECF No. 221).

## I.  LEGAL STANDARDS

Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Relevant evidence is generally admissible at trial, Fed. R. Evid. 402, but a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403.  "The district court has considerable discretion in performing the Rule 403 balancing test." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001).

Any additional evidentiary rules that apply to a particular portion of the Motions *in Limine* will be discussed in the relevant portion of the Order below.

## II. ANALYSIS

Having reviewed the Motions, the Court has divided the issues into three categories: (1) issues that can be resolved pre-trial; (2) issues that are context-dependent and must be decided at trial; and (3) issues that are deemed moot by the briefing on the Motions.

**A.     Aspects of the Motions *in Limine* that can be Decided Pre-Trial**

The Court has determined that the following four issues raised in the Motions *in Limine* can be ruled on pre-trial: (1) evidence pertaining to an "Honest Services" theory of mail and wire fraud; (2) the 60 Minutes footage; (3) evidence related to Craig Hospital and Summit County; and (4) the Government's summary exhibit(s).  The Court will address each in turn below.

1.     <u>Evidence Pertaining to an "Honest Services" theory of mail and wire fraud</u>

The Government moves to exclude any evidence related to an "honest services" theory of wire and mail fraud.  (ECF No. 218 at 3.)  The Government contends that any reference to an honest services theory is irrelevant because the Court has already ruled that this is not an honest services case.  The Government also contends that, to the extent it is relevant, any relevance is minimal and would be substantially outweighed by the risk of confusing the jurors because the Government did not charge this as an honest services case.

In response, Defendants contend "whether or not the Government can establish a <u>valid</u> wire or mail fraud claim in this case is still very much an open question."  (ECF

No. 226 at 2.)  Defendants acknowledge that the Court has already ruled that this is not an honest services case, but contend that the Court's ruling was premised upon a misunderstanding of *United States v. Evans*, 844 F.2d 36 (2d Cir. 1988).  Defendants provided the Court with the brief filed by the United States in *Evans* and argue that this brief shows that the Court misapprehended the facts in its prior ruling.  (ECF No. 226 at 3-4.)

Defendants are essentially asking the Court to reconsider its prior ruling.  In this Circuit, grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

The Court has reviewed *Evans* and the brief filed by Defendants and sees no reason to alter its prior ruling.  If anything, these additional materials buttress the Court's analysis in the Order denying Defendants' Motion to Dismiss.  (ECF No. 124 at 6.)  The brief filed by the government in *Evans* makes clear that the arms at issue in that case had previously been sold  to other countries by the United States or manufacturers in the United States.  (ECF No. 190-4 at 3.)  Because the government had already sold the arms to other countries, who were in turn attempting to sell them to Iran, the Second Circuit found that the government had no property interest in the arms. *Evans*, 844 F.2d at 41.  The Second Circuit refused to find that the government's right to place restrictions on future weapons sales—the only remedy available to the government for resale of the arms to Iran—was a property interest for purposes of the mail and wire fraud statutes.  *Id*.

The facts of this case are easily distinguishable.  The victims in this case were involved in a direct transaction with Defendants.  The Government's theory of the case is that the Defendants made certain representations to the victims (*e.g.,* that the e-waste would be disposed of domestically, that the e-waste would be destroyed) and that, in reliance on these promises, the victims paid the Defendants money to remove and handle their e-waste.  The victims clearly had a property interest in the monies they paid to Defendants.  Thus, despite Defendants' repeated insistence otherwise, the Court finds that *Evans* is not applicable here.

As the Court previously ruled, the Government did not charge this case under the "honest services" theory of mail and wire fraud.  Therefore, the Court will not instruct the jury on an "honest services" theory and will not permit Defendants to argue that the only property right at issue here was "honest services."  The property right at issue here is not the inalienable right to honest services; rather, the property is the monies paid to Defendants by the victims for disposal of their e-waste.

Accordingly, the Government's Motion *in Limine* is GRANTED to the extent it seeks to prevent Defendants from introducing evidence related to the "honest services" theory of mail and wire fraud.  Additionally, the Court REJECTS the portion of Defendants' Disputed Instructions E and F that relates to "the intangible right to honest services".

2.    60 Minutes Segment

Defendants move to exclude from evidence the portions of the "60 Minutes" television segment that the Government has designated.  (ECF No. 221 at 2.) Defendants contend that it is hearsay and violates the Confrontation Clause, as well as

being unduly prejudicial under Rule 403.

The Government contends that there is no hearsay issue because, aside from segments of an interview with Brandon Richter (which is non-hearsay because he is a Defendant), it seeks to admit only the pictures and not the sound.  The Government states that it will have a witness, who either filmed the designated portions or was present when they were filmed, testify about the authenticity of all footage and be available for cross-examination regarding Richter's statements.

The Court has viewed the portions of the video that the Government will seek to admit.  The portion of the video that shows the interview with Brandon Richter is plainly relevant to this case as it is a prior statement of one of the Defendants on the issue of how Defendants handled the e-waste that was entrusted to them.  It is also non-hearsay as it is a statement from one of the Defendants.  While the statements made by Mr. Richter during the interview may not be favorable to Defendants, they are not unduly prejudicial for purposes of Rule 403.  Therefore, the Court sees no reason to exclude the portions of the tape that show Mr. Richter's interview and the Government may present those portions during its case in chief.[1]

The remainder of the designated portion of the 60 Minutes segments shows an area of China that the parties refer to as "Goyu".  It shows toxic dumps full of electronic

---

[1] Defendants have argued that, if the Court allows admission of Mr. Richter's interview, under Rule 106, it should compel the Government to provide the full, unedited version of the interview.  The Court has considered this argument and rejects it.  The Government has made clear that it does not have the unedited version of Mr. Richter's testimony and Defendants have failed to cite any authority showing that the Government must affirmatively obtain an unedited version for Defendants' use.  As the Court pointed out at the Final Trial Preparation Conference, nothing is stopping Defendants from subpoenaing the full, unedited version from whatever entity is in possession of it.

waste, deplorable living conditions with local persons washing their clothes in an extremely polluted river, and local persons chasing and assaulting the camera crew. The vocal overlay describes how the local governmental authorities in Goyu want to keep the toxic dumps a secret and will go to great lengths to do so.[2]  The clear implication from the way in which the video is edited (moving between Mr. Richter's interview and these video scenes in Goyu) is that Defendants' e-waste ended up in toxic dumps like the one in Goyu.

In short, the portions of the video and commentary that show Goyu are inflammatory and the manner in which the video was edited and spliced together by 60 Minutes is prejudicial to the Defendants.  Defendants contend that there is no evidence linking e-waste handled by Defendants to any such dumps or to this region of China in general.  (ECF No. 211 at 2.)  The Court has seen no contrary evidence.  Given the lack of evidence linking Defendants to Goyu, and the inflammatory nature of the video and the commentary describing Goyu, the Court will not permit the Government to introduce the video or audio portions of the 60 Minutes segment that relate to Goyu during its case-in-chief.

However, the Court finds some merit in the Government's argument that, because Defendants are going to present evidence about a legitimate market for used electronic devices in Asia by way of the testimony of Mr. Minter, the Government should be permitted to introduce evidence showing the "dark side" of the e-waste market in Asia.  Accordingly, the Court leaves open the possibility that the Government could use

---

[2]  It is unclear whether the voice-over commentary would be played for the jury at trial. The Government represents that it "seeks to admit the pictures only and not the sound", but the copy provided to the Court had both the video and the voice-over commentary.

aspects of the 60 Minutes segment describing conditions in Goyu during its rebuttal case, contingent entirely on what the Defendants introduce by way of evidence on these issues in their case-in-chief.  However, the Government is on notice that, to the extent any of the video of the conditions in Goyu is allowed, the Court will not likely allow the admission of the audio voice-over commentary that appears on the 60 Minutes segment.

Accordingly, the Defendants' Motion *in Limine* is GRANTED to the extent it seeks to exclude the portions of the 60 Minutes segment related to Goyu from being introduced into evidence during the Government's case-in-chief.  After Defendants' case-in-chief, if the Government requests, the Court will consider whether to permit the Goyu portion of the 60 Minutes segment to be introduced during the Government's rebuttal case.  Defendants' Motion *in Limine* is DENIED as to the video and audio portions of the 60 Minutes segment that show the interview with Defendant Richter.

> 3.     Craig Hospital & Summit County

In its Rule 404(b) disclosure, the Government states that it intends to introduce evidence that Defendants promised Craig Hospital and Summit County that it would dispose of e-waste in an environmentally safe manner, without exportation overseas, and that the e-waste would be completely destroyed.  (ECF No. 171.)

Defendants move to exclude any reference to Defendants' relationship with Craig Hospital or Summit County as improper and untimely Rule 404(b) evidence. (ECF No. 221 at 5-6.)  Defendants also contend that allowing such evidence would be an improper amendment of the indictment.  Finally, Defendants argue that admission of this evidence would violate 403.

The Court need not address Defendants' arguments regarding whether this is improper 404(b) evidence or an improper amendment to the indictment because the Court finds that allowing admission of the evidence would violate Rule 403.  The Indictment charges Defendants with 13 counts of mail and wire fraud against nine entities.  To prove these counts, the Government will be permitted to introduce a plethora of evidence about business dealings between these nine entities and the Defendants.

The Government has failed to show how the evidence as to Craig Hospital or Summit County is different than the evidence involving the nine victims that are charged in the Indictment.  Therefore, the evidence related to Summit County and Craig Hospital is very likely cumulative of what the Government will already introduce as to the nine victims named in the Indictment.  Additionally, the Court finds under Rule 611 that, because they are not named victims, the evidence relating to Summit County and Craig Hospital would be confusing to the jury and a waste of the Court's and jury's time.

The Court acknowledges that, because Summit County and Craig Hospital were allegedly victims of the same alleged scheme, the evidence may be probative of some of the issues in this case.  However, the Court finds that the probative value of this evidence is substantially outweighed by the danger of confusing the issues, misleading the jury, wasting time, and needlessly presenting cumulative evidence.  Given the complexity of these charges and the number of victims named in the Indictment, the jury will already have its hands more than full keeping the evidence organized in their minds.  The Court need not add to the jury's burden by allowing the Government to introduce evidence about two victims that are not named in the Indictment.

Accordingly, the Court finds that evidence related to Summit County and Craig Hospital must be excluded under Rule 403. Defendants' Motion in Limine is GRANTED to the extent it seeks to exclude evidence related to uncharged victims Craig Hospital and Summit County.

4.    Summaries

Eleven days before trial, the Government disclosed to Defendants a summary exhibit (summarizing hundreds of documents showing shipments linked to the Defendants that went overseas) that it intends to use at trial. (ECF No. 227 at 4-5.) Defendants move to exclude this summary and argue that the late notice of this summary violates Defendants' Due Process rights. Defendants point out that they requested a bill of particulars as to Counts 1-13, which was denied by the Court, and that they repeatedly asked the Government to outline which shipments it intended to use to prove its case. Defendants move to exclude the Government's summary based on the "irreparable prejudice" to Defendants due to the late notice. (ECF No. 221 at 9-10.)

The Government points out that Defendants have had the material underlying these summary charts for more than 14 months and that Defendants have cited no law showing that the summary charts are *Brady* material that need to be disclosed. (ECF No. 221 at 4-5.) The Government argues that Defendants are trying to improperly narrow the fraud charges by requiring the Government to prove that the shipments themselves were illegal and not just that they violated a promise made to the victim (*e.g.*, that the e-waste would be disposed of domestically or that it would be destroyed rather than recycled).

With respect to the timing of the disclosure of the summary, the Court finds that the Defendants have not shown a Due Process violation. Defendants have had the underlying data for over a year and the Government is not required to reveal its theory of the case to Defendants by disclosing its trial exhibits. Moreover, in denying the Motion for Bill of Particulars, the Court found that the Indictment gave the Defendants sufficient notice of the charges against them and the Court sees no reason to reconsider this ruling.

What lies at the heart of this issue is the parties' disagreement about what the Government must prove in order to convict Defendants on the mail and wire fraud counts (Counts 1-13). Defendants contend that the Government must link a specific shipment to each mail or wire fraud count. (ECF No. 221 at 9.) Defendants also contend that the Government must prove that each shipment was, in and of itself, illegal. (*See* ECF No. 221 at 10 (emphasizing that "there is nothing unlawful about facilitating an export of a reusable monitor")). The Government, on the other hand, contends that wire fraud claims are "broad in scope" and "not limited to each individual, separate act of fraud within it or each individual victim." (ECF No. 227 at 5.) The Government contends that Defendants are attempting to improperly narrow the mail and wire fraud claims by requiring that the Government prove "the exact contents of each shipment" and "whether or not the monitors were working when they were exported." (*Id.*)

To avoid having this issue rear its head at every stage of the trial, and to provide the maximum amount of clarity for the parties in advance of trial, the Court will provide the parties with its jury instructions on the mail and wire fraud counts in the Conclusion

portion of this Order.  As the parties will see, nothing in the instructions on the mail and wire fraud counts relates to whether or not the shipments contained hazardous waste. Put simply, the Court concludes that nothing in the elements of the mail and wire fraud statutes require the Government to prove, in addition to such elements, that each overseas shipment contained hazardous waste in order to convict Defendants on these charges.[3]

Accordingly, Defendants' Motion *in Limine* is DENIED to the extent it seeks to bar the Government from introducing its summary exhibits at trial.  Of course, before these exhibits can be admitted as evidence, the Government will be required to prove the admissibility of each summary exhibit in accordance with the Federal Rules of Evidence, and Rule 1006 in particular.

**B.      Issues as to which the Court Reserves Ruling**

The Court has determined that the following issues raised in the Motions *in Limine* must be decided during trial.  However, in an effort both at transparency and to streamline as much as possible the admission of testimonial and documentary evidence at trial, the Court will provide a brief discussion of the salient issues:

1.      <u>Prior Statements of Defendants' Agents</u>

The Government moves to prevent Defendants from introducing e-mails from themselves and their employees on hearsay grounds.  (ECF No. 218 at 1-2.)  Though the Government intends to introduce the same sort of evidence (different e-mails from

---

[3]  To the extent Defendants argue that the Indictment's use of the term "e-waste" in conjunction with Counts 1-13 compels the Government to prove that the materials were hazardous waste, the Court firmly rejects such an argument.  "E-waste" is a generalized term that encompasses more than just electronic materials that are considered hazardous waste.

Defendants and their employees), the Government notes that, when it seeks admission of these e-mails, they are non-hearsay as the statement of a party-opponent or its agent.  (*Id.*)

Defendants respond that they are aware of FRE 801(d)(1) and 803 and will consider these rules in determining whether to offer a prior statement.  (ECF No. 226 at 1-2.)  However, Defendants also point out that prior statements are not hearsay under FRE 801(d)(1)(B) when offered to rebut a charge of recent fabrication or improper motive.  (*Id*. at 1.)

Given the importance of context with respect to Rule 801, the Court cannot make a pretrial ruling on the admissibility of any of these statements.  The Court notes that the parties seem to have a solid grasp of the evidentiary rules with respect to these statements and expects the attorneys to be mindful of these rules when offering evidence.  Accordingly, the Court reserves ruling on this issue.

2.     "Blame the Victim" Evidence

The Government asks the Court to exclude any evidence "designed to blame the victim for failing to detect and prevent the defendant's crime."  (ECF No. 218 at 3-4.) The Government points out that, in a fraud charge, the focus of the intent is on the defrauder, and not the victim.  (*Id*.)  The Government cites precedent from the Supreme Court and the Eleventh Circuit that holds that the victim's negligence is not a defense to a fraud count.  (*Id*.)

Defendants contend that it is "not the theory of the defense" to blame the victim. (ECF No. 226 at 6-7.)  However, Defendants correctly contend that the materiality of the false statements is an element of a fraud claim.  Therefore, Defendants argue that the

Court cannot preclude them from offering evidence related to whether or not representations made to the victims were material.  (*Id.*)

Again, the Court finds that it is nearly impossible to make a pretrial ruling on this category of evidence.  The context within which the evidence is offered will dictate its admissibility.  The Court notes that the parties seem to have a good grasp of the law governing this issue and the Court expects counsel to be mindful of these principles during trial.  Accordingly, the Court reserves ruling on this issue.

> 3.    Out-of-Court Statements

Defendants move to exclude statements made by former employees of Executive Recycling based on hearsay.  (ECF No. 221 at 1.)  Defendants acknowledge that these statements are not hearsay as to Executive Recycling but contend that they are hearsay as to Brandon Richter and Tor Olson.  Defendants also contend that admission of these statements could violate the Confrontation Clause.  Finally, Defendants argue that any statement that directly inculpates Richter or Olson should be excluded under the rule of *Bruton v. United States*, 371 U.S. 123 (1968), even if its relevant and admissible against Executive Recycling.

The Government contends that the prior statements are not testimonial and, therefore, do not implicate the Confrontation Clause.  (ECF No. 227.)  The Government acknowledges that prior statements of a co-defendant cannot be used against the other defendant, but contends that they are not excluded *per se* and that they are in fact admissible when they are not testimonial.  The Government cites *Davis v. Washington*, 547 U.S. 813 (2006) in support of this argument.

The Court finds that context will be crucial for making a ruling on admissibility of any out-of-court statement.  Specifically, the Court must determine whether each out of court statement is testimonial for purposes of the Confrontation Clause and that determination must be done on a case-by-case basis.  Moreover, any agency relationship of the declarant with the Defendants affects the hearsay analysis.  Accordingly, the Court reserves ruling on this issue.

        4.    <u>Shippers Export Declarations (SEDs)</u>

Defendants move to exclude the "Shipper's Export Declarations" (SEDs) and "Automated Export System" (AES) reports that list Executive Recycling as the "Principal Party in Interest" for hundreds of shipments.  (ECF No. 221 at 3.)  Defendants point out that the SEDs and AES were not filed by Executive Recycling or any of its agents and contend that the documents are "inherently untrustworthy and contain and rely exclusively on multiple levels of hearsay".  Defendants seem to implicitly admit that these are business records but argue that, because they rely on information obtained from sources outside the business preparing or making the record, they must have an "element of unusual reliability" that is not present here. (*Id*. at 4 *(citing United States v. Blechman*, 657 F.3d 1052 (10th Cir. 2011). )

The Government contends that this is a trial-context issue.  It says that it will attempt to establish admissibility, including the requisite foundation and any hearsay exception necessary for admission of these documents, and that Defendants will have the opportunity to cross-examine and object to this evidence at the time it is offered at trial.  (ECF No. 227 at 3.)

On the record before it, the Court cannot say, as a matter of law, that the Government cannot lay a proper foundation for the SEDs and/or establish sufficient hearsay exceptions to allow admission of the SEDs.  Accordingly, the Court reserves ruling on this issue.[4]

5.    Tacoma Photos

Defendants move to exclude photos of the shipment charged in Counts 14 & 15 that were taken when the shipment arrived back in Tacoma, Washington after having been rejected by the Hong Kong customs authorities.  (ECF No. 221 at 6.)  Defendants contend that these photos are irrelevant or that they should be excluded under Rule 403.  The basis for Defendants' objection is that the container of CRTs was unpacked and repacked by Hong Kong authorities and that no employee of Executive Recycling touched the container after it left Executive Recycling's facility.  Defendants contend that the photos taken in Hong Kong do not resemble those taken in Tacoma and that the photos would unduly prejudice them.  (*Id.*)

The Government takes issue with Defendants' description of the photos and the manner in which they vary from those taken in Hong Kong.  Moreover, the Government contends that Defendants' arguments go to the weight of the evidence, not its admissibility.  (ECF No. 227 at 4.)

---

[4]  The parties are hereby on notice that, depending on the evidence admitted at trial with regard to overseas shipments linked to Defendants, the Court may reconsider its prior Order Denying Defendants' Motion to Strike Surplussage.  (ECF No. 124 at 7-9.)  Because the Court does not intend to read the Indictment to the jury until after all evidence has been presented in this case, it need not decide this issue now.  However, the Court wanted to inform the parties that it is reconsidering this issue.

The Court notes that the parties have not submitted the photos to the Court for review. Without seeing the photos, it is impossible to make a ruling on their admissibility. Accordingly, the Court reserves ruling on this issue.

## C.    Moot Issues

Defendants moved to exclude: (1) "[a]ny report by the U.S. Government Accountability Office ("GAO"); and (2) evidence related to violation of Hong Kong law. In its Response Brief, the Government states that it is not offering any GAO reports. (ECF No. 227 at 5.)  The Government also states that "does not intend to prove defendants violated Hong Kong law."  (ECF No. 227 at 4.)

On the basis of these representations, which the Court expects the Government to stand behind at trial, the Court finds that Defendants' Motion to exclude this evidence is moot.[5]

## III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    The Government's Motion *In Limine* (ECF No. 218) is GRANTED in part and the Court RESERVES RULING in part;

2.    Defendants' Motion *In Limine* (ECF No. 221) is GRANTED in part and the Court RESERVES RULING in part; and

3.    With respect to the mail and wire fraud counts, the Court will instruct the jury as follows:

------

[5]  The Court acknowledges, as the Government contends, that evidence of overseas shipments to Hong Kong may be relevant and nothing in this Order precludes the Government from offering such evidence during trial.  However, the Court expects that the Government will not emphasize Hong Kong law or the fact that these shipments may have violated Hong Kong law.

## MAIL FRAUD — ELEMENTS

The defendants are charged in Counts 7 and 8 with violations of 18 U.S.C. Section 1341: Mail Fraud.

This law makes it a crime to use the mails in carrying out a scheme to defraud or to obtain money or property by false pretenses, representations, or promises.

To find the Defendant whose case you are considering guilty of this crime, you must be convinced that the Government has proved each of the following, or that the Defendant intentionally aided and abetted the commission of the crime (as defined in these instructions), beyond a reasonable doubt:

1.      The Defendant devised or intended to devise a scheme to defraud or to obtain money or property by false pretenses, representations, or promises, as described in Counts 7 and 8 of the Indictment;

2.      The Defendant acted with specific intent to defraud or to obtain money or property by false pretenses, representations, or promises;

3.      The Defendant mailed something, or caused another person to mail something, through a private or commercial interstate carrier for the purpose of carrying out the scheme; and

4.      The scheme employed false or fraudulent pretenses, representations, or promises that were material.

Each separate use of the mail in furtherance of a scheme constitutes a separate offense.

## WIRE FRAUD - ELEMENTS

The Defendants are charged in Counts 1-6 and 9-13 with violations of 18 U.S.C. Section 3143: Wire Fraud.

This law makes it a crime to use interstate wire communications facilities for the purpose of executing a scheme to defraud or to obtain money be means of false or fraudulent pretenses, representations, or promises.

To find the Defendant whose case you are considering guilty of this crime, you must be convinced that the Government has proved each of the following, or that the Defendant intentionally aided and abetted the commission of the crime (as described in these instructions), beyond a reasonable doubt:

1.  The Defendant devised or intended to devise a scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representation, or promises, as described in Counts 1-6 and 9-13 of the Indictment;

2.  The Defendant acted with specific intent to defraud or to obtain money by means of false or fraudulent pretenses, representation, or promises;

3.  The Defendant used interstate wire communications facilities or caused another person to use interstate wire communications facilities for the purpose of carrying out the scheme; and

4.  The scheme employed false or fraudulent pretenses, representations, or promises that were material.

Each separate use of interstate wire communication facilities in furtherance of a scheme constitutes a separate offense.

## SCHEME TO DEFRAUD — DEFINED

A "scheme to defraud or to obtain money by means of false or fraudulent pretenses, representations, or promises" is conduct intended, or reasonably calculated, to deceive persons of ordinary prudence or comprehension.

To prove a "scheme to defraud", what must be proved beyond a reasonable doubt is that the defendant knowingly devised or intended to devise a scheme that was substantially the same as the one alleged in the Indictment and that the use of mail or interstate wire communications facilities was closely related to the scheme in that the defendant caused the use of the mail or interstate wire communications facilities in an attempt to execute the scheme.

-18-

To "cause" the mails to be used is to do an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen even though the Defendant did not intend or request the mails to be used.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the facilities will follow in the ordinary course of business or where such use can reasonably be foreseen even though the defendant did not intend or request that such facilities be used.

### INTENT TO DEFRAUD — DEFINED

An "intent to defraud or to obtain money by means of fraudulent pretenses, representations, or promises" means an intent to deceive or cheat someone.

### FALSE REPRESENTATION — DEFINED

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be false when it constitutes a half-truth or effectively omits or conceals a material fact, provided it is made with intent to defraud.

### MATERIAL STATEMENT — DEFINED

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

### INTERSTATE WIRE COMMUNICATION — DEFINED

An "interstate wire communication" is a wire communication that crosses a state line. A "wire communication" includes telephone calls, electronic signals sent by wire (such as a fax or a financial wire), the use of the internet to send a message (such as an e-mail), and communicating with a website via the internet.

## UNANIMITY REQUIRED FOR WIRE AND MAIL FRAUD COUNTS

With respect to the first element of each mail and wire fraud count, the Government has charged Defendants under two theories: (1) the Defendants devised a scheme to defraud; and (2) the Defendants devised a scheme to obtain moneys, funds, and property by means of false pretenses, representations, or promises.

The Government does not have to prove both of these theories for you to return a guilty verdict. Proof beyond a reasonable doubt on one of the theories is enough. But in order to return a guilty verdict, all twelve of you must agree that the same theory has been proved. For you to return a guilty verdict against a particular Defendant on a particular count, all of you must agree either that the Government proved beyond a reasonable doubt that the Defendant whose case you are considering devised a scheme to defraud, or all of you must agree that the Defendant whose case you are considering devised a scheme to obtain moneys, funds, and property by means of false pretenses, representations, and promises.

The order of the instructions above is not necessarily the order in which they will appear in the Court's final jury instructions. The Court also reserves the right to modify the instructions stylistically so that they conform with the remainder of the Court's final jury instructions. However, the substance of the Court's final jury instructions on this issue will be as set forth above.

Dated this 2nd day of December, 2012.

BY THE COURT:

William J. Martinez
United States District Judge