**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 11-cr-00376-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

1.     **EXECUTIVE RECYCLING, INC.,**
2.     **BRANDON RICHTER, and**
3.     **TOR OLSON**,

      Defendants.

**ORDER REQUIRING BRIEFING ON AMOUNT OF LOSS AND NUMBER OF VICTIMS**

      This matter is before the Court on the parties' Sentencing Statements. (ECF Nos. 286, 297, 298.) The Sentencing Statements make clear that a number of issues will need to be resolved by the Court at sentencing. The purpose of this Order is to request additional briefing from the parties focused on issues that the Court believes will be relevant at sentencing, specifically the amount of loss attributable to Defendants' conduct for purposes of Section 2B1.1 of the Sentencing Guidelines.

      The parties' briefs show that the Government is calculating the amount of loss vastly differently than the two individual Defendants, who are calculating the loss differently than each other. The Government contends that the amount of loss should be $475,293.32. (ECF No. 286 at 10.) Defendant Richter has taken the position that the amount of loss is approximately $195,800. (ECF No. 297 at 7.) Defendant Olson

offers a number of positions on the appropriate amount of loss which range from no actual loss to $6,124.80.  (ECF No. 198 at 23-28.)

Having reviewed the parties' briefs, the Court believes that there are two main areas of disagreement: (1) which customers should be included in the loss calculation; and (2) what method of loss calculation (*e.g.*, net, gross, etc.) should be applied in arriving at the amount of loss.

## I.   Which Customers Should Be Counted in the Amount of Loss?

The Government takes the position that the amount of loss should be $475,293.32—the amount paid to Executive Recycling by the nine customers specifically named in the Indictment, as well as Summit County.  (ECF No. 286 at 10.)  Defendants contend that the amount paid to the customers named in the Counts on which the Defendants were acquitted—Centura Health, Cherry Creek Schools, and The Children's Hospital—should not count in the amount of loss.  (ECF No. 297 at 6; ECF No. 298 at 23.)  Defendants also contend that the amount paid by ADT—which was named generally as a customer in the Indictment but was not named in any particular Count of the Indictment—should not be considered.  (*Id.*)  Finally, Defendants contend that the amount paid by Summit County—which was not named in the Indictment but from which the Court permitted testimony during rebuttal—should not be counted in the amount of loss.  (*Id.*)

As a preliminary matter, and to avoid the parties wasting time addressing this issue in their briefs, the Court informs the parties that it will not include for purposes of the loss calculation for Section 2B1.1, the amount paid to Executive Recycling by

Centura Health, Cherry Creek Schools, and The Children's Hospital.  The Court is aware of the case law suggesting that the Court *could* include the amounts paid by these customers despite the jury's acquittal on these Counts.  See *United States v. Hull*, 160 F.3d 265, 270 (5th Cir. 1998) ("[W]hether the defendant was charged with, convicted of, or acquitted of conspiracy should not dispositively affect attributable conduct for sentencing purposes.").  However, the Court notes that all of the cases cited by Government on this point hold only that the Court may consider acquitted conduct.  See *United States v. Watts*, 519 U.S. 148, 154 (1997) ("[W]e are convinced that a sentencing court may consider conduct of which a Defendant has been conduct of which a defendant has been acquitted.") The Government has failed to cite, and the Court is not aware of, any requirement that the Court include acquitted conduct in its loss calculation.  In the Court's view, the latter approach would, among other things, directly beg the question of why even have a trial at all if, in the end, the Court considers both convicted and acquitted conduct in the course of determining a just and appropriate sentence to impose upon Defendants.

The law is also clear that the Court should consider only the loss attributable to conduct that is criminal in nature.  S*ee United States v. Schaefer*, 291 F.3d 932, 939-40 (7th Cir. 2002) (relevant conduct under 1B1.3 must be criminal in nature to be considered in the amount of loss).  In acquitting Defendants on the Counts of the Indictment naming as victims Centura Health, Cherry Creek Schools, and The Children's Hospital, the jury explicitly found that there was no criminal conduct undertaken with respect to these entities.  Even accepting the different evidentiary standard which applies at sentencing as opposed to the trial, the Court will not second-

guess this verdict. Accordingly, the Court does not intend to include the amount paid by these entities to Executive Recycling in its loss determination.

However, the Court is undecided as to whether to include the monies paid by ADT and Summit County in the amount of loss. The jury did not make an explicit finding that Defendants' conduct towards these entities was criminal, but also did not explicitly find that such conduct was not criminal. As such, the Court orders the parties to address the following issues with respect to the monies paid by ADT and Summit County:

1. To include the monies paid by ADT and Summit County in the loss calculation, what specific findings must the Court make? For example, is the Court required to find that the jury found Defendants' guilty of executing a "scheme to defraud" rather than specific and discrete instances of fraud?

2. What evidence was presented at trial that would permit the Court to find that Defendants' actions towards ADT and Summit County were criminal (as opposed to a breach of contract or some other similar dispute that is civil in nature)?

3. May the Government present additional evidence related to ADT and Summit County at Defendants' sentencing hearings so as to meet their burden of showing that the conduct was criminal? *See Schaefer*, 291 F.3d at 939-40 (holding that the government bears the burden of proving, by a preponderance of the evidence, that the defendant's activities towards a particular customer were unlawful). If so, does the Government intend to do so?

## II.     How Should the Court Decide the Amount of Loss?

In its Sentencing Statement, the Government takes the position that the amount

of loss should be the full amount paid by each customer to Executive Recycling—*i.e.*, the "gross loss". (ECF No. 286 at 10.) Defendant Richter appears to adopt this same position. (ECF No. 297 at 7.) However, Defendant Olson takes the position that this is the wrong method of calculating the loss. (ECF No. 298 at 17-19.) Olson contends that the Court should offset the gross amount of loss with the "fair market value of services rendered" such that the correct loss calculation should be the "net loss". (*Id*. at 18.)

The Court notes that there is support in Guideline § 2.B1.1 for both approaches. Supporting Defendant Olson's contention, Application Note 3(e)(i) states that the "[l]oss shall be reduced by" the "fair market value" of "the services rendered by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." There is no dispute in this case that Defendants provided a service to each of the victims by taking away their unwanted e-waste, destroying data, and de-commissioning equipment. These services undoubtedly had some market value. Thus, there is some support in the Guidelines for Defendant Olson's contention that the amount of loss should be the "net loss"—the amount paid to Executive Recycling minus the value of the services rendered by Executive Recycling.

However, the Guidelines contain a number of exceptions to this rule. One of these exceptions is for a fraudulent scheme involving regulatory crimes or schemes that involve the evasion of regulatory processes. *See* U.S.S.G. § 2B1.1 App. Note 3(F)(v). When a fraudulent scheme involves goods that "were falsely represented as approved by a governmental regulatory agency", the Sentencing Commission has stated that "loss shall include the amount paid for the property, services or goods transferred, rendered, or misrepresented, with no credit provided for the value of those items or

services." *Id*.  There was evidence at trial that the monitors at issue in this case (or at least exportation thereof) was regulated by the government and that Defendants made representations to the victims that they would dispose of the monitors in compliance with such regulations.  Thus, it is arguable that there should be no offset for the value of the services rendered by Defendants to the victims.

Given the seeming conflict between these provisions, the parties are ordered to provide briefs addressing the following issues:

1. Should the Court's loss calculation be guided by Application Note 3(e)(i), which includes an offset for the value of the services rendered by Defendants, or Application Note 3(F)(v), which does not?

2. If the Court finds that there should be an offset for the value of the services rendered by Defendants, how should the Court determine the value of such services?  What evidence was presented at trial regarding this value?

3. Should the amount of loss include all monies paid to Executive Recycling by the victims (including that paid for data destruction, de-commissioning and destruction of computer towers, etc.) or just the monies paid for the monitors?  What evidence permits the Court to conclude that the jury convicted Defendants of any fraudulent act related to any materials other than the monitors?

To the extent the parties feel other aspects of § 2B1.1's Application Notes are applicable to the loss calculation in this case, they should include a discussion of these other provisions in their briefs.

Additionally, when answering the above questions, the parties shall be as specific as possible.  That is, to the extent the parties can provide actual numbers

supporting their contention as to the amount of loss, that would be more helpful than simply arguing theories related to how the loss should be calculated.  Also, to the extent the parties can refer to specific testimony from the trial, that is more helpful than general argument about the state of the evidence.

Because the Government bears the burden of establishing the loss attributable to Defendants' conduct, the Government is DIRECTED to file its opening brief no later than February 24, 2013.  Defendants' Response to this brief shall be filed on or before March 5, 2013.  The Government may file a Reply by no later than March 10, 2013.[1]  **No motion to extend or continue any of these briefing deadlines will be considered**.

Dated this 15th day of February, 2013.

BY THE COURT:

William J. Martinez
United States District Judge

---

[1] The Court is aware that March 10, 2013 is a Sunday. Given the limited time remaining for briefing these issues before the sentencing hearings scheduled for the first week of April, however, the Court has no alternative other than to set the briefing schedule as set forth above.