**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 11-cr-00376-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

1.     **EXECUTIVE RECYCLING, INC.,**
2.     **BRANDON RICHTER, and**
3.     **TOR OLSON**,

    Defendants.

---

**ORDER SETTING FORTH BASIS FOR DENIAL OF
MOTION FOR JUDGMENT OF ACQUITTAL**

---

At the close of the Government's case-in-chief, Defendants[1] moved for judgment of acquittal on Counts 3, 4, 5, 6, 8, 13, and 16. The Court orally denied Defendants' motion and Defendants renewed the motion at the close of all evidence. The Court again orally denied the motion and stated that it would issue a written order setting forth the basis for its decision, if necessary, after the jury returned its verdict.

On December 21, 2012, the jury returned its verdict. Defendant Executive Recycling was convicted on Counts 2, 7, 9, 10, 11, 12, 13, 14, and 15. (ECF No. 271-15.) Defendant Brandon Richter was convicted on Counts 2, 7, 9, 10, 11, 12, 13, 15, and 16. (ECF No. 271-16.) Defendant Tor Olson was convicted on Counts 2, 7, 9, 10,

---

[1] Defendants Executive Recycling and Brandon Richter originally moved for judgment of acquittal on Counts 3, 4, and 16 while Defendant Tor Olson moved for acquittal on Counts 3, 4, 5, 6, 8, 13, and 16. However, each party joined in the other's motion. Therefore, the Court considers the oral Motions for Judgment of Acquittal to have been brought by all Defendants.

11, 12, 13, and 15.  (ECF No. 271-14.)

Because Defendants were acquitted by the jury on Counts 3, 4, 5, 6, and 8, Defendants' Motion for Judgment of Acquittal on these charges is moot and the Court need not elaborate on the basis for its prior denial of the Motion.  The purpose of this Order is to set forth the basis for the Court's denial of Defendants' Motion for Judgment of Acquittal as to Count 13 with respect to all Defendants and Count 16 as to Brandon Richter.

## I.  LEGAL STANDARD

Federal Rule of Criminal Procedure 29(a) provides:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

In considering a motion for judgment of acquittal pursuant to Rule 29, the Court cannot weigh the evidence or consider the credibility of witnesses.  *See Burks v. United States*, 437 U.S. 1, 16 (1978).  Rather, the Court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982).  The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that could be drawn therefrom, in the light most favorable to the government.

See *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir. 1986). Acquittal is proper only if the evidence implicating defendant is nonexistent or is "so meager that no reasonable jury could find guilt beyond a reasonable doubt." *White*, 673 F.2d at 301.

## II. ANALYSIS

### A.   Count 13

Count 13 of the Indictment charges Defendants with transmitting a wire communication in interstate commerce on December 23, 2008 for the purpose of executing or attempting to execute their fraudulent scheme. (ECF No. 1 p. 12.) Specifically, Count 13 references an e-mail from Tor Olson to Robert Rowland of the Denver Newspaper Agency ("DNA") with the subject line "ER Documented Process and Procedures—Denver Newspaper Agency." (*Id.*)

Defendants moved for judgment of acquittal on this Count and argued that the Government had failed to present any evidence showing that any of DNA's equipment had been exported. Defendants also argued that DNA's representative testified that Executive Recycling could do what it wanted with DNA's computer monitors; DNA's main concern in choosing to contract with Executive Recycling was complete and total data destruction. Defendants argued that, because there was no evidence that Executive Recycling had failed to destroy any of DNA's data, there was insufficient evidence to allow the jury to convict the Defendants on Count 13.

In response, the Government argued that there was sufficient evidence to allow the jury to find that Defendants made false statements to the victims about the use of downstream vendors, that they were not going to export anything, and that they were

going to follow the law.  The Government contended that Defendants' misstatements were intended to mislead the victims and that they did, in fact, mislead the victims.  The Government's argument did not address any of the victims, including DNA, specifically.

After the trial, the Court ordered the parties to file supplemental briefs regarding Count 13.  (ECF No. 274.)  The Court has received and reviewed these filings.  (ECF Nos. 288, 289 & 290.)

To convict Defendant on Count 13, the jury was required to find that the Defendants:  (1) devised or intended to devise a scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representation, or promises, as described in the Indictment; (2) acted with specific intent to defraud or to obtain money by means of false or fraudulent pretenses, representation, or promises; (3) used interstate wire communications facilities or caused another person to use interstate wire communications facilities for the purpose of carrying out the scheme; and (4) the scheme employed false or fraudulent pretenses, representations, or promises that were material.

The Court finds that the Government presented sufficient evidence to permit a reasonable juror to convict Defendants on Count 13.   Robert Rowland, a decision maker for DNA, testified that his main concern was that all data provided to Defendants by DNA be totally destroyed.  He also testified that it was important to him that nothing from DNA be exported wholesale but he did not mind if properly shredded components were exported.  Mr. Rowland also testified that Defendants assured him that they used Doe Run, a domestic lead recycling company, as a downstream vendor for CRT glass.

The Government introduced evidence showing thousands of whole monitors

were exported overseas by Executive Recycling. There was also evidence showing that Defendants never sent CRT glass to Doe Run. Thus, a reasonable juror could infer that Defendants made a number of false representations to DNA. Additionally, given Mr. Rowland's testimony about the characteristics of Executive Recycling that he relied on in choosing to do business with it, a reasonable juror could also infer that the false statements were material to DNA's decision to do business with Defendants.

With respect to the scheme to defraud or obtain money by false pretenses, the Government introduced evidence that Defendant Richter and Olson were involved with designing and providing information for ER's website and promotional materials and that these materials made representations about ER's business practices, including data destruction and downstream vendors. There was also evidence that Defendant Olson personally made affirmative misrepresentations to Rowland about how DNA's materials would be handled, specifically that no whole components would be exported and that CRT glass would be sent to Doe Run. From this evidence, a reasonable juror could infer that Defendants devised a scheme to obtain DNA's business based on false pretenses and that they did so with the specific intent to deceive.

Finally, as to the third element, the Government introduced an e-mail from Tor Olson to Robert Rowland in which Olson attached a description of the procedures that Executive Recycling claimed to use to destroy DNA's equipment. The parties stipulated that this e-mail was an interstate wire communication. As the e-mail contains misrepresentations about how DNA's materials would be handled, a reasonable juror could infer that it was sent in furtherance of the scheme to defraud. Thus, the Court finds that there was sufficient evidence presented at the trial to permit a reasonable

juror to conclude that the Government had met its burden as to each element of Count 13.

In his supplemental briefing, Defendant Olson contends that there is no "direct evidence" that ER failed to properly dispose of DNA's equipment in accordance with all laws and regulations or that ER failed to dispose of DNA's equipment properly in the United States. (ECF No. 289.) Even accepting this argument as true, the Government is not required to offer direct evidence of a fact to prove its case. As the jury was instructed, the law makes no distinction between direct and circumstantial evidence and the jury is permitted to draw reasonable inferences from the evidence presented. Given the evidence about the hundreds of shipments that were sent overseas by Defendants, which is circumstantial evidence supporting the Government's theory of the case, a reasonable juror could infer that some of DNA's equipment was in those shipments.

Defendant Olson also argues that, because there is only evidence that ER collected 42 monitors from DNA between 2005 and 2009, it would not be reasonable to infer that some of DNA's monitors were in the overseas shipments. The Court disagrees. While there was some evidence that Executive Recycling processed CRT monitors in ways that did not involve shipping them overseas, the evidence would certainly permit an inference that the vast majority of the monitors collected by Executive Recycling were shipped overseas. There was certainly no direct evidence that the 42 monitors collected from DNA were processed in way that did not involve those monitors being shipped overseas.

Moreover, even if it were unreasonable to infer that monitors from DNA went overseas, the Government's case was not limited to the manner in which Executive

Recycling handled CRT monitors. There was also evidence about other equipment being shipped overseas or re-sold for wholesale. Mr. Rowland testified that he did not want any of DNA's equipment sold at wholesale; he wanted it all shredded to avoid future liability. There was certainly sufficient evidence in the record to permit a reasonable juror to infer that some of DNA's equipment was exported or that some of DNA's equipment was not totally destroyed as Mr. Rowland had been promised.

In ruling on a motion brought pursuant to Rule 29, the Court is not to weigh the evidence; rather, it must view the evidence in the light most favorable to the Government as the non-movant and must judge only whether a reasonable juror could convict a defendant on the evidence (both direct and circumstantial). *See Hooks*, 780 F.2d at 1531. Given this standard of review, the Court has little difficulty concluding that a reasonable juror could have convicted all three Defendants on Count 13 of the Indictment. Therefore, the Court reaffirms its prior denial of Defendants' Motion for Judgment of Acquittal on this Count.

**B.     Count 16**

The jury found Brandon Richter guilty on Count 16 of the Indictment, which alleged that Defendants had obstructed justice by "knowingly alter[ing], destroy[ing], mutilat[ing], and conceal[ing] any record, document and tangible object with the intent to impede, obstruct and influence the investigation and proper administration of any matter within the jurisdiction of the Environmental Protection Agency, a department and agency of the United States; to wit ER's export shipping records from approximately October 2004 through December 2008." (ECF No. 1.)

The jury was instructed that, to convict Brandon Richter on Count 16, it had to

find beyond a reasonable doubt that he: (1) knowingly altered, destroyed, mutilated, concealed, covered up, or falsified Executive Recycling's export shipping records from approximately October 2004 to December 2008; and (2) that he did so with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of the Environmental Protection Agency.

The Court finds that there was ample evidence to permit a reasonable juror to convict Brandon Richter on Count 16. The testimony relevant to this count came from witness Eric Johnson, who worked for the Environmental Protection Agency ("EPA") as an inspector involved with the Resource Conservation and Recovery Act. Mr. Johnson testified that he and a team of investigators from the EPA went to Executive Recycling's facilities on September 11, 2008 to conduct a compliance inspection. A compliance inspection involves reviewing the paperwork required for hazardous waste management compliance and touring the facility. Mr. Richter was not at the Executive Recycling facility when Mr. Johnson arrived but Mr. Johnson was able to contact him by phone.

During the phone call between Mr. Johnson and Mr. Richter, Mr. Johnson asked Mr. Richter to provide all bills of lading and shipping records, as well as any other documents related to shipping CRTs from Executive Recycling for the prior three years. Mr. Richter told Mr. Johnson that there were very few records showing shipments of CRTs outside of the United States.

Mr. Johnson testified that, in response to this request, the EPA received three or four bills of lading for shipments to Mexico and one for a shipment to Hong Kong. At trial, the Government introduced a plethora of documents showing that Executive Recycling was the shipper for hundreds of containers full of electronic goods that went

overseas. The Government showed Mr. Johnson the documents related to the overseas shipments and Mr. Johnson testified that, despite his request for all shipping documents related to exporting CRTs, none of these documents were provided to him by Mr. Richter.

Based on this evidence, a reasonable juror could have found that Mr. Richter knowingly concealed Executive Recycling's export shipping records with the intent to impede an EPA investigation. Thus, the Court finds that the Government presented sufficient evidence to permit a reasonable juror to convict Brandon Richter on Count 16.

### III.  CONCLUSION

For the reasons set forth above, as well as those set forth on the record during trial, Defendants' oral Motions for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 are DENIED.

Dated this 7th day of March, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge